AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### District of Montana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One black foldable cell phone, unknown make/model,<br>with black cover, with two additional SIM cards located<br>inside the cover | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. MJ-25-**41**-M-KLD

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, for description of the item to be searched, which is incorporated herein by reference.

located in the _____ District of _____ Montana _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B for a list of items to be searched for and seized, which is incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1349, 1343, 2 | Conspiracy to Commit Wire Fraud and Wire Fraud |
| 18 U.S.C. §§ 912, 2 | Impersonating a Federal Agent |

The application is based on these facts:

The accompanying affidavit is incorporated as if fully restated herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ ~~B~~ Shaun Schrader
*Applicant's signature*

Shaun Schrader, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone _____ *(specify reliable electronic means)*.

Date: May 16, 2025

City and state: Msla MT

Kathleen L DeSoto
*Judge's signature*

Hon. Kathleen L. DeSoto , U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>One black foldable cell phone, unknown make/model, with black cover, with two additional SIM cards located inside the cover | MJ-25-**41**-M-KLD |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Shaun Schrader, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41.  This affidavit supports an application for a search and seizure of the following (hereinafter "the device"):

> One black foldable cell phone, unknown make/model, with black cover, with two additional SIM cards located inside the cover

2.      The device was seized on May 12, 2025, from a black 2024 Subaru Forrester, bearing Montana license plate 7-62297E, during the search of a vehicle driven by Zabi Ullah Mohammed.  This applied for warrant would authorize the

forensic examination of the device identified in Attachment A, for the purpose of identifying electronically stored data particularly described in Attachment B.

3.      I am a Special Agent with the FBI and have served in this capacity since 2011. I am assigned to the Salt Lake City Field Office, Missoula, Montana Resident Agency. My current assignment includes the investigation of complex financial crime matters. Prior to my employment with the FBI, I was a Special Agent with the Internal Revenue Service – Criminal Investigation Division for six years. I am also a Certified Fraud Examiner.

4.      As a Special Agent, I have received training in various aspects of criminal investigations dealing with criminal law, criminal tax law, money laundering, search, seizure, forfeiture, and various financial investigative techniques. I have attended continuing educational classes and seminars in various aspects of criminal investigation, dealing specifically with asset seizure and forfeiture, financial investigative techniques, and international financial fraud. My experience includes investigations of individuals, partnerships, and corporations. Many of these investigations involved illegal activities, such as mail or wire fraud, investment schemes, embezzlement, theft, currency reporting violations, narcotics trafficking, money laundering, and tax evasion.

5.      I have been involved in the execution of numerous federal search warrants, which resulted in the seizure of hard copy and electronic evidence,

2

including financial records, tax returns, bank records, accounting records, correspondence, and other documentation related to criminal activity.

6.    I have been involved in the execution of numerous federal seizure warrants, which resulted in the seizure of assets, including cash, vehicles, jewelry, and real property purchased with money traceable to proceeds of fraud and narcotic-related crimes.

7.    The facts in this affidavit come from my investigation, personal observations, my training and experience, and information obtained from other law enforcement officers, witnesses, and informants.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.    Through my experience and training, I am aware that perpetrators of financial fraud schemes utilize electronic devices to communicate with co-conspirators and past and current victims of their schemes.  The perpetrators of these financial fraud schemes also utilize electronic messages, such as email, messaging platforms, and text messages to promote their schemes in an effort to entice and attract new victims to the scheme.

9.    Based on my training and experience, and the facts as set forth in this affidavit, I submit there is probable cause to believe that the device contains

evidence of violations of 18 U.S.C. §§ 1343 & 1349 (wire fraud and conspiracy to commit wire fraud) and 18 U.S.C. § 912 (impersonating a federal agent).

**PROBABLE CAUSE**

10.    The information below is presented to show that Zabi Ullah Mohammed and other unidentified co-conspirators were involved in the theft of $913,000 from a 72-year-old victim named Jane Doe.[1]  Jane was influenced by subjects she was communicating with by telephone to part with her money, in violation of 18 U.S.C. §§ 1343, and evidence of this criminal activity is likely to be found within the device.  Evidence corroborating these allegations includes witness interviews, surveillance, monitored phone calls, and search warrants executed on a vehicle driven by Mohammed.

11.    On April 26, 2025, Jane contacted the Missoula County Sheriff's Office to report she believed she was the victim of fraud.  Jane reported she was contacted telephonically on April 1, 2025, by someone purporting to be with "Amazon." The person inquired if Jane purchased some computer equipment. Jane advised she did not have an Amazon account, and she did not purchase any computer equipment.  The "Amazon" representative explained Jane was likely the

---

[1] The name and identity of the victim is known to the agent, but the name is replaced with Jane Doe to protect the privacy of the victim.

victim of identity theft. The representative then said they would assist by transferring Jane to the Social Security Department.

12. After being transferred to the "Social Security Department," that representative told Jane that she was the victim of identity theft, and her identity had been used in potential money laundering. The representative then told Jane they would transfer her to a U.S. Marshal.

13. Jane was then connected to a "U.S. Marshal" by the name of "Carlos Silva." Silva explained that Jane's identity had indeed been stolen, to include her Social Security Number. Silva told Jane that in order not to be considered a suspect in the matter, and to assist with the investigation, she could not tell anyone what was occurring. Silva told Jane that to keep her funds safe, she needed to take all of her money out of her bank accounts so that it could be "legalized." Jane was assured the money would be returned to her.

14. Initially, Silva instructed Jane to withdraw $45,000.00 in cash from her bank account. After Jane advised Silva she had the cash, Silva said he would be sending an "agent" to her house to pick up the cash. On April 2, 2025, an "agent" arrived at Jane's house and picked up the package containing the cash. Jane was led to believe this "agent" was an agent of the U.S. Secret Service or U.S. Marshal's Service.

15.    Silva then instructed Jane to purchase gold, which would be picked up by another agent. On April 16, 2025, an "agent" arrived at Jane's home and picked up a package containing $212,000.00 in gold.

16.    Silva then instructed Jane to purchase additional gold that would again be picked up by an "agent." On April 18, 2025, an "agent" arrived at Jane's home and picked up a package containing $656,000.00 in gold.

17.    After reporting the fraud to law enforcement, Jane advised she was still in contact with the scammers. Jane agreed to participate in a ruse attempt to get an "agent" to pick up another package from her home.

18.    On April 29, 2025, at the direction of law enforcement, Jane contacted Silva and advised him she had another $57,000.00 for him. Jane also texted Silva a picture of what appeared to be $57,000.00. Silva told Jane he would be arranging an agent to pick up the cash from Jane's home.

19.    Between April 29, 2025, and May 12, 2025, numerous phone calls and text messages were exchanged between Silva and Jane. In my training and experience, I know that text messages and phone calls generate interstate communications. During that time, Silva cancelled multiple scheduled pickups and advised all "agents" were busy. Finally, on May 12, 2025, an "agent" arrived at Jane's home for a pickup. Prior to the pickup, at the direction of Silva, Jane

6

provided Silva with a photograph of what she was wearing. Silva also provided Jane with a four-digit code that she was to provide to the "agent."

20.    At approximately 10:50 a.m., Jane received a phone call from Silva advising her the "agent" was outside her home. While on speaker phone with Silva, Jane exited her home, provided the "agent" with the code, and then provided him with the box that was supposed to contain the cash. In reality, the box contained a tracking device that was monitored by law enforcement.

21.    After accepting the box, the "agent" departed Jane's residence. Law enforcement personnel followed the vehicle to a nearby restaurant. The driver exited the vehicle, went inside the restaurant, and then returned to the vehicle.

22.    While in the parking lot of the restaurant, it is believed the driver opened the box and discovered there was a tracking device in the box. The driver left the box and tracker in the parking lot and then departed.

23.    Upon exiting the parking lot, the driver was observed driving at a high rate of speed out of the area. Surveillance also observed the driver speaking into a phone.

24.    Shortly after providing the box to the "agent," Jane received a phone call from Silva. Silva told Jane there was paper and a transmitter or tracker in the box. Silva asked Jane if she put that in the box. Silva asked Jane why she lied to

7

him and why she did this, referring to contacting law enforcement. Silva also informed Jane that she would not be receiving her money back.

25.    The fact that Silva knew there was a tracker in the box shortly after the pickup shows Mohammed was in telephonic contact with Silva.

26.    At the direction of your affiant, marked patrol units with the Missoula County Sheriff's Office were asked to conduct a probable cause traffic stop of the vehicle. The stop was conducted near mile marker 100 on Interstate 90 as the vehicle was headed westbound.

27.    During the stop, documents were discovered identifying the driver as Zabi Ullah Mohammed. The driver also later identified himself as Zabi Ullah Mohammed to your affiant.

28.    The vehicle was determined to be a rental vehicle from Thrifty Car Rental. During a search of the vehicle, law enforcement located a backpack. Within the backpack, documents were discovered containing Mohammed's name. Those documents included airline tickets, car rental documents, and receipts from various cities outside of Montana. Also located within the backpack was $68,987.00 in cash, mostly in $100 bills.

29.    During the search, law enforcement also seized a telephone, which is the device. Later, during an interview with your affiant, Mohammed identified the device as his phone. During the interview, your affiant also allowed Mohammed

to utilize the phone to make a phone call. In order to access the phone, Mohammed was observed entering a passcode into the phone.

30.    After his arrest, Mohammed was brought to the FBI's Missoula Resident Agency for an interview. During the interview, Mohammed said he lived in New Jersey and he had a master's degree in cyber security. Mohammed said he was a legal permanent resident of the United States and that he was from India. Mohammed also said he was an Uber driver.

31.    Mohammed claimed he was in Montana for work and that he picked things up for people.

32.    Upon further questioning, Mohammed asked to speak with an attorney.

33.    Your affiant monitored multiple phone calls between Jane and Silva. During the phone calls, your affiant observed the fact that Silva spoke with what sounded to be an Indian accent. Based on knowledge and experience, your affiant knows that scams similar to this one often originate with operators located in India.

34.    Based on the above information, I submit Mohammed conspired with others to travel to Montana and defraud Jane, in violation of 18 U.S.C. §§ 1343 & 1349 (wire fraud and conspiracy to commit wire fraud), and 18 U.S.C. § 912 (impersonating a federal agent). I submit evidence of these violations will be found in the device. I base this on the following:

9

a.  Based on my training and experience, criminals involved in setting up a meeting with a victim to pick up cash, as shown in the affidavit, will utilize telephone and messaging applications with each other. Those communications constitute interstate or international wires.

b.  Based on my training and experience, cellular devices often keep a historical log of GPS locations. This historical log can be used to track a subject's path of travel and link them to a particular event, in this case the meeting with Jane at her home, and potentially meetings with other victims.

c.  Based on my training and experience, I know that fraud schemes that abuse the elderly will immediately transport the money out of state to avoid detection and ensure the victim cannot recoup the funds.

## TECHNICAL TERMS

35.     Based on my training and experience, I use the following technical terms to convey the following meanings: Wireless Telephone, cellular phone, or smartphone: A wireless telephone (or smartphone, mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter or receivers, enabling communication with other wireless telephones or

traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet using a browser or other applications. Wireless telephones may also include global positioning system ("GPS") technology for determining location of the device.

36.     Based on my training, experience, and research, I know that the device has capabilities that allows it to serve as wireless telephones or smartphones, digital cameras, portable media players, GPS navigation devices, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

37.     Based on my knowledge, training and experience, I know that electronic devices can store information for long periods of time. Similarly, things

11

that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools even if the information is deleted.

38.    Forensic evidence. As further described in Attachment B, this application seeks permission to locate, not only electronically stored information that might serve as direct evidence of crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic evidence might be on the device because:

    a.    Data on storage medium can provide evidence of a file that was once on the storage medium, but has since been deleted or edited, or of a deleted portion of a file.

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper

context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## CONCLUSION

39.    Based on the forgoing, I request that the Court issue the proposed search warrant.  I believe there is probable cause to conclude that the device, a black foldable cell phone, unknown make/model, with black cover, with two additional SIM cards located inside the cover, which was seized during the

13

investigation and known to be utilized by Ziba Ullah Mohammed, contain evidence showing he was working with "Silva" and other unidentified co-conspirators to fraudulently steal money from Jane and possibly others.

40.     It is my belief that there is probable cause to believe that a search of the items described in Attachment A will provide other evidence of crimes, including, but not limited to, fraudulent misstatements, the falsification of documents, the disposition of fraudulently obtained funds, and discussions between co-conspirators regarding travel plans to Montana, and other states, to illegally obtain cash from victims through fraudulent means.

Respectfully submitted,

/S/ Shaun Schrader

Shaun Schrader
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to on the phone under Fed. R. Crim. P. 4.1.

Kathleen L. DeSoto
United States Magistrate Judge